UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | Case No. 1396(E) |
| NESHOBA COUNTY SCHOOL DISTRICT, Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR DECLARATION OF UNITARY STATUS**

Defendant Neshoba County School District ("District") submits this memorandum of law in support of its motion for unitary status. The District has complied in good faith with this Court's desegregation orders and eliminated, to the extent practicable, the vestiges of discrimination resulting from the District's former racially dual system. A declaration of full unitary status and dismissal of this case is therefore warranted.

## I. Procedural History

The United States filed this lawsuit against the District on January 11, 1967, seeking disestablishment of the District's *de jure* segregated school system. At the time, the District operated three schools: Neshoba Central Elementary School and Neshoba Central High School, which white students attended, and George Washington Carver Attendance Center, which Black students attended. After additional litigation, the Court issued on November 26, 1969, an Order Approving Amended Desegregation Plan for Neshoba County School District, which adopted a

desegregation plan agreed to between the United States and the District and made the plan "a part of this order the same as if copied fully herein." Ex. A, Nov. 26, 1969 order at 1 ("Order").

Under the Order, the District would operate three schools: Neshoba Central Elementary School, to serve all children grades 1–6 in the County; Neshoba Central Junior High to serve all children in grades 7–8; and Neshoba Central High School to serve all children in grades 9–12. Order at 4–5. The Order also required the District to desegregate faculty; transport students on non-segregated and otherwise nondiscriminatory basis; select location and construct new buildings in a manner to prevent the re-occurrence of dual school structures; allow for "majority-to-minority" transfers, so students may transfer from a school in which their race is a majority to a school in which their race is a minority; and require that transfers outside of the district occur on a non-discriminatory basis, unless the transfers' "cumulative effect will reduce desegregation or reinforce the dual school system." Order at 11.

The case has continued for over 56 years without Court intervention—but with continuing compliance monitoring by the DOJ, including periodic requests for responses targeted at gathering data and other information related to the District's affirmative desegregation obligations. Over the decades, the District responded to each of these requests for information, and the DOJ fully and carefully reviewed and analyzed the responses. The District has since fully implemented the plan, complied in good faith with the Court's orders, and achieved unitary status in all respects to the extent practicable. The District has responded to the United States' most recent request from 2020–2022, and the United States has fully and carefully reviewed and analyzed these responses.

## II. Legal Standards

The ultimate goal of every desegregation case, including this one, is the elimination of the vestiges of past racial segregation in all aspects of school operations to the extent practicable and, ultimately, a declaration that the school district has achieved unitary status. Federal court

supervision of a local school system aids in remedying the constitutional violation of segregation and, after unitary status has been achieved, returning control of the school system to the locally elected board. *Freeman v. Pitts*, 503 U.S. 467, 490–91 (1992).

To be declared unitary, the District bears the burden of showing that it has complied in good faith with its desegregation obligations, eliminated the vestiges of past racial discrimination to the extent practicable, and no longer discriminates on the basis of race. *Id.* at 490–92. A school district operating under a court approved desegregation plan must show that it has "complied in good faith with the desegregation decree since it was entered". *Bd. of Educ. of Okla. City Pub. Schs. v. Dowell*, 498 U.S. 237, 249–50 (1991). The U.S. Supreme Court has identified at least six areas the Court must assess for a school system to be considered unitary in all aspects: (1) student assignment; (2) faculty assignment; (3) staff assignment; (4) transportation (5) facilities; and (6) extra-curricular activities. *Green v. Sch. Bd. of New Kent Cnty.*, 391 U.S. 430, 435 (1968).

The Supreme Court has further emphasized that the extreme remedy of federal judicial supervision of local school systems was intended to be a temporary act limited to curing the effects of prior discrimination. "Returning schools to the control of local authorities at the earliest practicable date is essential to restore their true accountability in our governmental system." *Freeman*, 503 U.S. at 490. Judicial supervision of local school systems should not operate in perpetuity. Dissolving a desegregation decree after the local authorities have operated in compliance with it for a reasonable period of time properly recognizes that "necessary concern for the important values of local control of public school systems dictates that a federal court's regulatory control of such systems not extend beyond the time required to remedy the effects of past intentional discrimination." *Dowell*, 498 U.S. at 248 (internal quotations omitted). Local control over the education of children allows citizens to participate in decision-making and allows

innovation so that school programs can fit local needs. *Milliken v. Bradley*, 418 U.S. 717, 742 (1974); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 50 (1973).

## III. THE NESHOBA COUNTY SCHOOL DISTRICT IS UNITARY

The District has complied with this Court's orders and met its desegregation obligations to the extent practicable in each of the factors identified in *Green*. Based on its compliance monitoring, the United States agrees the District has complied with the Order in good faith and has eliminated the vestiges of segregation to the extent practicable. A declaration of full unitary status is therefore appropriate.

### A. Student Assignment

The District has complied with this Court's order to implement a single-grade configuration, where all students in a grade attend the same school. To assess student assignment, "[c]ourts have commonly set either a +/-15% or +/- 20% deviation from the overall student racial percentages to determine if a school is racially identifiable." *United States v. Mississippi (Choctaw Cty. Sch. Dist.)*, 941 F. Supp. 2d 708, 717 (N.D. Miss. 2013) (citing *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1114 (5th Cir. 1982), *United States v. Georgia*, 171 F.3d 1333, 1338 (11th Cir. 1999)). By implementing a single-grade configuration, the District has ensured that the racial make-up of each school is representative of the District-wide student population to the extent practicable:

| **2023 – 24 School Year** | | | | |
|---|---|---|---|---|
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 281 (19%) | 1013(69%) | 172(12%) | 1466 |
| Neshoba Central Middle (6–8 grades) | 113 (17%) | 436 (65%) | 118 (18%) | 667 |
| Neshoba Central High (9–12 grades) | 192 (20%) | 579 (61%) | 185 (19%) | 956 |
| District-Wide Totals | 586 (19%) | 2028 (66%) | 475 (15%) | 3089 |
| **2024 – 25 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 230 (16%) | 837 (59%) | 352 (25%) | 1419 |
| Neshoba Central Middle (6–8 grades) | 115 (18%) | 378 (58%) | 153 (24%) | 646 |

| | | | | |
|---|---|---|---|---|
| Neshoba Central High (9–12 grades) | 160 (18%) | 513 (56%) | 236 (26%) | 909 |
| District-Wide Totals | 505 (17%) | 1728 (58%) | 741 (25%) | 2974 |
| **2025 – 26 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 196 (13%) | 813 (54%) | 496 (33%) | 1505 |
| Neshoba Central Middle (6–8 grades) | 111 (18%) | 382 (61%) | 133 (21%) | 626 |
| Neshoba Central High (9–12 grades) | 137 (16%) | 468 (55%) | 246 (29%) | 851 |
| District-Wide Totals | 444 (15%) | 1663 (56%) | 875 (29%) | 2982 |

The District operates as a single-grade structure, meaning there is only one school option for all students District-wide. Thus, racial segregation between schools is, effectively, not possible. As reflected in the table above, the racial makeup of all schools in the District roughly mirror the total District population. In her recent opinion granting a similar motion for unitary status, the Chief Judge of the U.S. District Court for the Western District of Tennessee stated the following about the district's single-grade structure: "In fact, the most persuasive argument for the remediation of de jure segregation is that all students of the same grade have attended the same school since 1993. Thus, because the Board has acted in good faith, the Court need not retain judicial control over its efforts." Op. at 6, *United States of America, et al, v. Dyersburg Bd. of Educ.*, 2:66-cv-00241-SHL (W.D. Tenn. Feb. 11, 2026), 2026 U.S. Dist. LEXIS 28367.

The District grants student transfers on a nondiscriminatory basis, and student transfers do not have a cumulative effect of reducing desegregation or reinforcing a dual system in the District. The District has therefore satisfied its desegregation obligations on student assignment.

**B. Faculty & Staff Assignment**

The Order requires that the District assign faculty and staff to schools in a manner such that "in no case will the racial composition of a staff indicate that a school is intended for [black] students or white students." Order at 8. The Order also requires that the District hire, assign, pay, dismiss, and otherwise treat staff in a nondiscriminatory manner "except to the extent necessary to correct discrimination." *Id.* The Order's requirements align with the District's legal obligation to

implement "total faculty desegregation," meaning "the pattern of teacher assignment to any particular school should not be identifiable as tailored for a heavy concentration of either [black] or white pupils in the school." *United States v. Bd. of Educ. of Baldwin Cty.*, 417 F.2d 848, 850–51 (5th Cir. 1969) (quoting *United States v. Jefferson Cty. Bd. of Educ.*, 380 F.2d 385, 394 (5th Cir. 1967)).

| **Faculty Assignment in Neshoba County School District** | | | | |
|---|---|---|---|---|
| **2023 – 24 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 7 (4.3%) | 156 (95.7%) | | 163 |
| Neshoba Central Middle (6–8 grades) | 5 (8.8%) | 52 (91.2%) | | 57 |
| Neshoba Central High (9–12 grades) | 7 (8.2%) | 78 (91.8%) | | 85 |
| District-Wide Totals | 19 (6.2%) | 286 (93.8%) | | 305 |
| **2024 – 25 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 10 (6.2%) | 150 (93.2%) | 1 (0.6%) | 161 |
| Neshoba Central Middle (6–8 grades) | 5 (8.9%) | 51 (91.1%) | | 56 |
| Neshoba Central High (9–12 grades) | 4 (4.9%) | 77 (95.1%) | | 81 |
| District-Wide Totals | 19 (6.4%) | 278 (93.3%) | 1 (0.3%) | |
| **2025 – 26 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 8 (5.0%) | 150 (94.4%) | 1 (0.6%) | 159 |
| Neshoba Central Middle (6–8 grades) | 7 (12.1%) | 51 (87.9%) | | 58 |
| Neshoba Central High (9–12 grades) | 5 (6.1%) | 77 (93.9%) | | 82 |
| District-Wide Totals | 20 (6.7%) | 278 93.0%) | 1 (0.3%) | 299 |

| **Staff Assignment in Neshoba County School District** | | | | |
|---|---|---|---|---|
| **2023 – 24 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 5 (26.3%) | 14 (73.7%) | | 19 |
| Neshoba Central Middle (6–8 grades) | 3 (33.3%) | 6 (66.7%) | | 9 |
| Neshoba Central High (9–12 grades) | 5 (45.5%) | 6 (54.5%) | | 11 |
| District-Wide Totals | 13 (33.3%) | 26 (66.7%) | | 39 |
| **2024 – 25 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |
| Neshoba Central Elementary (K-5 grades) | 6 (30%) | 14 (70%) | | 20 |
| Neshoba Central Middle (6–8 grades) | 3 (33.3%) | 6 (66.7%) | | 9 |
| Neshoba Central High (9–12 grades) | 6 (50%) | 6 (50%) | | 12 |
| District-Wide Totals | 15 (36.6%) | 26 (63.4%) | | 41 |
| **2025 – 26 School Year** | | | | |
| **School** | **Black** | **White** | **Other** | **Total** |

| | | | | |
|---|---|---|---|---|
| Neshoba Central Elementary (K-5 grades) | 5 (26.3%) | 14 (73.7%) | | 19 |
| Neshoba Central Middle (6-8 grades) | 3 (33.3%) | 6 (66.7%) | | 9 |
| Neshoba Central High (9–12 grades) | 5 (45.5%) | 6 (54.5%) | | 11 |
| District-Wide Totals | 13 (33.3%) | 26 (66.7%) | | 39 |

The District has satisfied its obligation to desegregate its faculty and staff, and it is nondiscriminatory in its hiring and employment of faculty and staff. As a result, these factors are satisfied.

**C. Transportation**

The Order requires that the District "re-examine[] regularly" its transportation system and further requires the District to develop bus routes and assign students to bus-routes in a manner "designed to [e]nsure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis." Order at 11. The District has examined its transportation system, and it transports all eligible pupils on a nondiscriminatory basis.

**D. Facilities**

As with student assignment in the District, the District's single-grade structure inherently ensures that all students are provided the same facilities and resources without regard to race. This factor is therefore satisfied.

**E. Extra-Curricular Activities**

Extracurricular activities are open to all students regardless of race.

## IV. <u>Conclusion</u>

To obtain a declaration of unitary status, the District must show that its schools have: (1) fully and satisfactorily complied with the Court's decrees for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the

first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87–89 (1995); *Freeman*, 503 U.S. at 491–92, 498; *Dowell*, 498 U.S. at 248–50. As the Court stated in *Freeman*, "A history of good-faith compliance is evidence that any current racial imbalance is not the product of a new *de jure* violation, and enables the district court to accept the school board's representation that it has accepted the principle of racial equality and will not suffer intentional discrimination in the future." 503 U.S at 498 (citing *Morgan v. Nucci*, 831 F.2d 313, 321 (1st Cir. 1987) ("A finding of good faith . . . reduces the possibility that a school system's compliance with court orders is but a temporary constitutional ritual."))

As shown above, the District has complied in good faith to eliminate the vestiges of its prior dual school system to the extent practicable. Based on the United States' monitoring of the District's compliance, the United States agrees. The Parties respectfully request that the Court declare the District has achieved full unitary status, dissolve outstanding injunctive orders, and dismiss this case with prejudice.

Dated: May 6, 2026

Respectfully submitted,

ROBERT LEE THOMAS, MSB 105358
Counsel, Neshoba County School District
Alford, Thomas & Thomas, PLLC.
Attorneys at Law
435 Center Avenue
Post Office Box 96
Philadelphia, MS 39350
Telephone: 601-656-1871
Facsimile: 601-656-0189
Email: rlthomasatty@gmail.com

U. S. COURT OF APPEALS
FILED
NOV 26 1969
EDWARD W. WADSWORTH
CLERK

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
UNITED STATES OF AMERICA, PLAINTIFFS & APPELLANTS

VS

NESHOBA COUNTY SCHOOL DISTRICT ET AL APPELLEES

District Court Civil Action Number 1396(E)

Fifth Circuit Court No. 28030 et al

ORDER APPROVING AMENDED DESEGREGATION PLAN FOR NESHOBA COUNTY SCHOOL DISTRICT

This day this cause came on to be heard by the United States Court of Appeals for The Fifth Circuit on motion of The Neshoba County School District to approve an amended plan for the desegregation of all attendance centers in said District beginning January 1, 1970, and thereafter, and the Court finds and adjudicates that said plan has been agreed to by The United States Department of Justice and that said plan is to the best interests of the District and will fully comply with the laws of the land and requirements of The United States Constitution. The plan is hereto attached and marked Exhibit "A" and made a part of this order the same as if copied fully herein.

The Court finds that the Racial statistics at the one attendance center under the plan will be as follows under the said plan:

| | Negro | White |
|---|---|---|
| Neshoba Central Elementary Attendance Center | 413 | 1051 |
| Neshoba Central Junior High Attendance Center | 148 | 388 |
| Neshoba Central High School Attendance Center | 286 | 592 |
| Total | 847 | 2031 |

IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT that the order entered in this cause on November 7, 1969, is modified and changed to the extent that the plan hereto attached and made a part of this order is made the desegregation plan for The Neshoba County School District beginning January 1, 1970, and to

EXHIBIT
A

remain in force thereafter unless modified or changed by further order of this Court.

ORDERED AND ADJUDGED BY THE COURT on November 24, 1969.

Judge U. S. Court of Appeals for 5th Circuit

Judge U. S. Court of Appeals for 5th Circuit

Judge U. S. Court of Appeals for 5th Circuit

Approved as to form:
Neshoba County School District

By: ______________________
Their Attorney

United States Department of Justice

By: ______________________
Attorney

A true copy
Test: EDWARD W. WADSWORTH
Clerk, U. S. Court of Appeals Fifth Circuit

By ______________________
Deputy

New Orleans, Louisiana JAN 16 1970

# AN AMENDED DESEGREGATION PLAN

FOR THE

NESHOBA COUNTY SCHOOL DISTRICT

November 13, 1969

NESHOBA COUNTY SCHOOL DISTRICT

RECOMMENDED PLAN FOR STUDENT DESEGREGATION

Recommendations, 1969 - 1970, 2nd Semester

The Neshoba County School District by their Board of Trustees hereby submits an amended plan that we have prepared and the Board of Trustees recommend to the Department of Health, Education and Welfare and the Fifth Circuit Court of Appeals. Said plan provides for complete disestablishment of the dual school system in this district at the beginning of the second semester of the 1969-70 school year, and thereafter, with the second semester to begin January 1, 1970.

In order to bring about a unitary school system in which schools are not identifiable by race, the following recommendations are to be effective for the second semester of the 1969-70 school year and thereafter, with the second semester to begin January 1, 1970.

School capacities and enrollment figures are supplied by the Superintendent and his staff.

We recommend that:

1. Neshoba Central Elementary School will serve all children in grades 1 - 6 at the Neshoba Central School Attendance Center in the Neshoba County School District.
2. Neshoba Central Jr. High will serve all children in grades 7 - 8 in the Neshoba County School District.
3. Neshoba Central High School will serve all children in grades 9 - 12 in the Neshoba County School District.

At the present time, Neshoba County School District comprises most of Neshoba County, Mississippi. Philadelphia Municipal Separate School District is located in approximately the center of The District and there are portions on the edges in some instances that have been long ago placed in adjoining Districts, such as the portion on the South side that is placed in Union Municipal Separate Special School District.

There are only two attendance centers in The Neshoba County School District. One is the George Washington Carver Attendance Center that has been patronized by Negro students in the past and The Neshoba Central Attendance Center that has been patronized largely by White students in the past. There is an elementary building and high school building located on the same premises at Neshoba Central Attendance Center.

The Neshoba County School District is engaged in 100% busing of its students. [illegible] nated. It would be much better for the students to be bused to one attendance center, such as Neshoba Central Attendance Center, than for each bus to leave some at one center and then have to go on to the other center with the remaining students. Also, it would be more economical on the District.

There are adequate facilities at Neshoba Central Attendance Center and ample room to house and take care of the entire staff and faculty at George Washington Carver Attendance Center and the same time keep in Neshoba Central Attendance Center staff and faculty. The same is true in reference to the students. There is ample room and ample facilities at Neshoba Central Attendance Center to accomodate all of the students of George Washington Carver Attendance Center and Neshoba Central Attendance Center at Neshoba Central Attendance Center and it would be to the best interests of all of the citizens and students and staff that all of the schools be combined at Neshoba Central Attendance Center rather than have two attendance centers with integration at two different places in the District. Six new classrooms have just been completed and the adequacy aforesaid exists now and can be put into operation beginning January 1, 1970. The six classrooms just completed and which have not been put into use are at Neshoba Central Attendance Center.

It would be much less expensive to move the equipment from George Washington Carver Attendance Center than the equipment from Neshoba Central Attendance Center. Also, high school equipment is more difficult to move. There will be much less complication in moving the entire Carver Attendance Center staff, faculty, equipment, and students to Neshoba Central and in implementing a good education program than that proposed by the Health, Education & Welfare plan now approved by the Court and same should be modified, changed, and amended so that there will be only one school in the Neshoba County

School District, and that is The Neshoba Central Attendance Center. This will be in strict conformity of law and all of the requirements of The United States Supreme Court, Fifth Circuit Court of Appeals, and other Constitutional standards, and under the circumstances, promote better education for all concerned. More courses in education with more teachers with more equipment and better libraries will be available at less cost to the citizens.

The Neshoba County School District and their trustees have already stated their position to the Court that they do not believe that it would be to the best interests of anyone to change over the school attendance centers at this time during the middle of the school year and that the implementation of any desegregation plan should be delayed. However, knowing that they are ordered by the Court to implement a plan effective January 1, 1970, it is respectfully submitted that the plan herein designed is much better than the one ordered by the Court and would better serve all the citizens, black and white, than the one they are now required to implement.

The trustees have diligently followed the orders of the Court and appointed a bi-racial committee composed of four Negroes and five White adult, reputable citizens of the District, and same constituted a true cross section of the entire District and they recommended that this plan be approved. The trustees are elected officials and have discussed the matter with more than a majority of the citizens in the District and they find that said majority of the citizens feel, as the bi-racial committee did, that this plan is far superior to the one submitted by Health, Education & Welfare and ordered to be implemented by this Court.

# PRESENT

## COMPOSITE BUILDING INFORMATION FORM

DATE: November 13, 1969

NESHOBA COUNTY SCHOOL DISTRICT

| NAME OF SCHOOL | GRADES | CAPACITY PERM. | CAPACITY W. PORTS. | STUDENTS W | STUDENTS N | STUDENTS T | STAFF W | STAFF N | STAFF T | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|
| Neshoba Central Elem. | 1 - 6 | 1540 | 1570 | 1047 | Other 4 | 1051 | 42 | | 42 | |
| Neshoba Central Jr. High | 7 - 8 | 560 | | 388 | | 388 | 12 | | 12 | |
| Neshoba Central High School | 9 -12 | 910 | | 589 | 3 | 592 | 26 | | 26 | |
| George Washington Carver | 1 -12 | 980 | 1010 | 0 | 847 | 847 | 1 | 37 | 38 | |
| TOTAL | | 3990 | | 2024 | 854 | 2878 | 81 | 37 | 118 | |

# COMPOSITE BUILDING INFORMATION FORM

## ATTENDANCE CENTERS PROPOSED FOR 2nd SEMESTER BEGINNING JANUARY 1, 1970

DATE: Projected for 2nd semester 1969-70 Neshoba County School District

| Name of School | Grades | Capacity | | Students | | | Staff | | | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Perm. | U.Ports | W | N | T | W | N | T | |
| Neshoba Central Elementary | 1-6 | 1540 | 1570 | *1051 | 433 | 1464 | *43 | 17 | 60 | |
| Neshoba Central Jr. High | 7-8 | 560 | 560 | *388 | 148 | 536 | *12 | 5 | 17 | |
| Neshoba Central High School | 9-12 | 910 | 940 | *592 | 286 | 878 | *26 | 15 | 41 | |
| Total | | 3010 | 3070 | *2031 | 847 | 2878 | *81 | 37 | 118 | |

* Total of Whites includes Indians

## DESEGREGATION OF FACULTY AND OTHER STAFF

The School Board shall announce and implement the following policies:

1. The principals, teachers, teacher-aides and other staff who work directly with children at a school shall be so assigned for the second semester of the school year 1969-70 and subsequent years that in no case will the racial composition of a staff indicate that a school is intended for Negro students or white students. For the second semester of the 1969-70 school year the district shall assign the staff described so that the ratio of Negro to white teachers in each school, and the ratio of other staff in each, are substantially the same as each such ratio is to the teachers and other staff, respectively, in the entire school system.

The school district shall, to the extent necessary to carry out this desegregation plan, direct members of its staff as a condition of continued employment to accept new assignments.

2. Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin, except to the extent necessary to correct discrimination.

3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition, if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of non-racial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

"Demotion: as used above includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

Desegregation of Faculty and Other Staff:

The full staff of George Washington-Carver Attendance Center will be transferred to Neshoba Central Attendance Center and the entire staff at Neshoba Central will be on a non-racial and non discriminatory basis and full and complete desegregation of the faculties and staff will be in existence at Neshoba Central Attendance Center during the second semester 1969-1970 and thereafter at the Neshoba Central Attendance Center, the only attendance center in the Neshoba County School District.

TRANSPORTATION

The transportation system shall be completely re-examined regularly by the superintendent, his staff, and the school board. Bus routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis.

SCHOOL CONSTRUCTION AND SITE SELECTION

The size and location of new school buildings and additions to existing buildings can significantly affect desegregation now and in the future.

All school construction, school consolidation, and site selection (including the location of any temporary classrooms) in this system shall be done in a manner which will prevent the recurrance of the dual school structure once this desegregation plan is implemented.

MAJORITY TO MINORITY TRANSFER POLICY

Whenever there shall exist schools containing a majority of Negro students, this school district shall permit a student (Negro or white) attending a school in which his race is in the majority to choose to attend another school where space is available, and where his race is in a minority.

ATTENDANCE OUTSIDE SYSTEM OF RESIDENCE

If the School District grants transfers to students living in the District for their attendance at public schools outside the district, or if it permits transfers into the district of students who live outside the district, it shall do so on a non-discriminatory basis, except that it shall not consent to

transfers where the cumulative effect will reduce desegregation in either district or reinforce the dual school system.

## SUGGESTIONS FOR PLAN IMPLEMENTATION

Successful implementation of desegregation plans largely depends upon local leadership and good faith in complying with mandates of the Courts and the laws upon which the Courts act. The following suggestions are offered to assist local officials in planning for implementation of desegregation orders.

### Community

1. The Superintendent and Board of Education should frankly and fully inform all citizens of the community about the legal requirements for school desegregation and their plans for complying with these legal requirements.

2. The Board of Education should issue a public statement clearly setting forth its intention to abide by the law and comply with orders of the Court in an effective and educationally responsible manner.

3. School officials should seek and encourage support and understanding of the press and community organizations representing both races.

4. The Board of Education, or some other appropriate governmental unit, should establish a bi-racial advisory committee to advise the Board of Education and its staff throughout the implementation of the desegregation plan. Such committee should seek to open up community understanding and communication, to assist the Board in interpreting legal and educational requirements to the public.

5. The Superintendent should actively seek greater involvement of parents of both races through school meetings, newsletters, an active and bi-racial P.T.A., class meetings, parent conferences, and through home visits by school personnel.

6. The Superintendent and Board of Education should regularly report to the community on progress in implementing the desegregation plan.

### School Personnel

1. The Superintendent should provide all personnel copies of the desegregation plan and arrange for meetings where the personnel will have an opportunity to hear it explained.

2. The Board of Education should issue a policy statement setting forth in clear terms the procedures it will follow in reassignment of the personnel (see section on desegregation of staff).

3. Assignments of staff for the school year should be made as quickly as possible with appropriate followings by school principals to assure both welcome and support for personnel new to each school. Invitations to visit school before the new school year begins should be offered.

4. The Superintendent should see that a special orientation program is planned and carried out for both the professional and non-professional staffs (including bus drivers, cafeteria workers, secretaries and custodians) preparatory to the new school year. He should make every effort to familiarize new and reassigned staff with facilities, services, and building policies, and prepare them to carry out their important role in a constructive manner. The Superintendent should direct each principal to see that each teacher new to a school is assigned for help and guidance to a teacher previously assigned to that school. Each such pair of teachers should have an opportunity to meet before the school year actually begins.

5. The Superintendent should arrange an in-service training program during the school year to assist personnel in resolving difficulties and improving instruction throughout the implementation period. Help in doing this is available from the South Mississippi In-Service Consulting Center at Hattiesburg, Mississippi.

6. It is important that, through personal observations, students see that nonprofessional service positions in their schools are not for members of one race and that harmonious working relationships can exist between members of both races. The Superintendent and Board of Education should therefore take all necessary steps to assure that all staffs are bi-racial.

Instructional Program

1. Each principal should be required to appoint bi-racial faculty committees to study and, as necessary, revise each area of the curriculum to assure better learning opportunities for all students. This should become a continuous activity in each school and throughout the district.

2. Student evaluation policies and procedures should be reviewed continuously for areas in need of improvement and adjustment to encourage the educational growth and motivation of students.

3. Remedial programs in reading and mathematics skills, as appropriate, should be introduced and/or expanded for all students in need of special help. Such a program should supplement regular course offerings and assignments of students.

4. Groupings procedures should be reviewed and revised as necessary to assure they support the spirit as well as letter of desegregation plan the district has accepted responsibility for implementing in good faith.

5. Participation in extracurricular activities by students of both races should be actively encouraged by administrators and teachers as a means for developing school spirit and a feeling of belonging.

6. School organizations, student government, cheerleaders musical organizations, athletic teams must be operated on a non discriminatory basis and should include students of both races.

7. Guidance counselors should be oriented and urged to plan a leading role in successful implementation of the desegregation plan.

8. The curriculum should be reviewed and, as necessary, revised to provide recognition of Negro history, culture and contributions to our society. Library books which deal with such subjects should be added to school book collections.

9. Vocational education offerings should be reviewed and improved as a means of providing students of both races with education relevant to vocations l interests and as a means of reducing dropouts.

10. Headstart or similar preschool programs for children of both races should be implemented.

11. Use of Federal and State education funds should be planned comprehensively for maximum educational benefit to all eligible children.

STUDENTS

1. The superintendent should direct each principal to hold a special orientation program welcoming students who will be new to a school, before the regular school year begins.

2. The superintendent should require each principal to see that students are frankly and fully informed about the desegregation plan and their responsibilities to help carry it out. Each principal should seek to establish rapport and communication links with new students to encourage mutual understanding and confidence.

3. The superintendent should direct each principal to establish a student-faculty human relations committee representing both races to aid in the successful

implementation of desegregation.

4. All school staff and members of the student body should exert extra effort to secure the full participation of all students of both races in extra-curricular programs, including when appropriate, the provision of a "late bus" for those staying after school to participate in such programs.

5. Each principal should request teachers to make themselves available to students outside of regular class for counseling and extra instructional help.

Respectfully submitted by Neshoba County School District, by its Trustees, The Neshoba County Board of Education, to-wit:

| | |
|---|---|
| Mr. J. C. Blount, Jr. Dist. 1 | Arnold Deweese, Dist. 2 |
| Albert Elliott, District 3 | Marvin White, Dist. 4, & President of Board |
| County Supt. Education, Neshoba County, Miss., and Secretary of said Board | Bernard E. Breazeale, District 5 |