**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERNDISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>NESHOBA COUNTY SCHOOL DISTRICT,<br>Defendant. | ) | Case No. 3:67-CV-01396-HTW-LGI |

**MEMORANDUM OF EXPLANATION AND ARGUMENT IN SUPPORT OFDECLARATION OF UNITARY STATUS**

Defendant Neshoba County School District ("District") submits this memorandum of explanation and argument in support of declaration of unitary status. The District has complied in good faith with this Court's desegregation orders and eliminated, to the extent practicable, the vestiges of discrimination resulting from the District's former racially dual system. A declaration of full unitary status and dismissal of this case is therefore warranted.

## I. Hearing and Order

A community hearing was held on October 21, 2026, before this Honorable Court for the purpose of allowing the Neshoba County Populus an opportunity to be heard on any objections or comments against the Declaration of Unitary Status of the Neshoba County School District. No persons from Neshoba County availed themselves of the opportunity to do so, nor did they submit any written objections or comments. The only individuals appearing were neither residents of Neshoba County, nor alumni of the District, nor individuals with any personal connection to or professional representation of any individual with first-hand knowledge of the District. At the conclusion of the comments by these individuals the Court directed the Neshoba County School

District to submit, in writing an explanation of the 2024-2025 College and Career Readiness Measure.

## II. Legal Standards

To be declared unitary, the District bears the burden of showing that it has complied in good faith with its desegregation obligations, eliminated the vestiges of past racial discrimination to the extent practicable, and no longer discriminates on the basis of race. *Freeman v. Pitts*, 503 U.S. 467, 490–92 (1992). The Supreme Court has further emphasized that the extreme remedy of federal judicial supervision of local school systems was intended to be a temporary act limited to curing the effects of prior discrimination. "Returning schools to the control of local authorities at the earliest practicable date is essential to restore their true accountability in our governmental system." *Id.* Judicial supervision of local school systems should not operate in perpetuity. Dissolving a desegregation decree after the local authorities have operated in compliance with it for a reasonable period of time properly recognizes that "necessary concern for the important values of local control of public school systems dictates that a federal court's regulatory control of such systems not extend beyond the time required to remedy the effects of past intentional discrimination." *Board of Education of Oklahoma Public Schools, Independent School District No 89, Oklahoma County, Oklahoma v. Dowell*, 498 U.S. 237, 248 (1991) (internal quotations omitted). Local control over the education of children allows citizens to participate in decision-making and allows innovation so that school programs can fit local needs. *Milliken v. Bradley*, 418 U.S. 717, 742 (1974); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 50 (1973).

## III. Explanation of the College and Career Readiness Measure

The College and Career readiness component of the Mississippi Accountability Model in 2017. This Component represents the share of high school students who satisfied the applicable college or career readiness criteria as set by the Mississippi Department of Education. Specifically,

to be considered "college and career ready" students must have: 1.) Met ACT benchmarks in English (scoring 18 or above), Reading (scoring 22 or above) and Mathematics (scoring 22 or above) or 2.) Earned a Silver ACT WorkKeys certificate together with completion of a career and technical education (CTE) pathway or an industry certification or 3.) Earned a gold or platinum ACT WorkKeys certificate. As the percentage shown on the accountability model is not an overall academic proficiency rate or a measure of any student's ability to enter the workforce or attend college, it is simply the percentage of students meeting the very specific criteria used for the component of the accountability model.

During the comments at the end of the hearing the undersigned believed he heard, though at times it was difficult to hear, that the statistic cited eighty-nine (89) percent of white students were "college and career ready" versus thirty-two (32) percent of African American students. The undersigned would tender that the percentages shown on those 2024-2025 results were 42.3% of African Americans in the Neshoba County School District were deemed "college and career ready" and 88.2% of White students were deemed "college and career ready". It should be noted that the state average for African American students was 36.0% and 72.4% for White students during that same school year. As such the Neshoba County School District is outperforming the state average in both categories. The District has also consistently outperformed the state in reducing the gap between African-American and White students nearly every year over the last decade.

For the 2025-2026 school year, the Mississippi Department of Education replaced the College and Career Readiness Component with a new Assessment component. The measure takes the percentage of possible points earned based on student achievement on the ACT, SAT, ACT WorkKeys, or ASVAB. Each student has a score ranging from 0 to 1 based on four points of achievement across the assessments. The new measure takes the points earned by each student and

not the percentage meeting the previous benchmarks. In the 2025-2026 school year, the percentage of African American students in the Neshoba County School District meeting the measure was 50.0% against a state average of 44.3% versus 67.7% of white students against a state average of 68.9%. Again, the District continues to outperform the state average in this model as well.

## IV. The District Has Eliminated the Vestiges of *De Jure* Segregation and Does Not Discriminate in the Quality of Education It Provides to its Students

As the testimony showed, all students in the District have access to all classes and programs, regardless of race. The District continues to expand college and career readiness for students. The District provides and encourages all students to take advantage of district-wide opportunities to take the ACT, ACT WorkKeys, and ASVAB free of charge, has expanded ACT preparation courses and increased enrollment in same to ensure that all students have the opportunity to take advantage, offers ACT prep boot camps during the school day for all students who wish to participate, and hosting events such as Get2College to allow students and their families to understand college entrance requirements and assessments. In order to ensure that students are aware of these expanded programs, the District announces these opportunities in class, publicizes the programs through the active parent app and student notification systems regularly, has employed a career coach to discuss and advise all students on the different opportunities and has counselors available for all students to discuss these options. The District remains committed to expanding opportunities for all students, regardless of race, to seize opportunities to better place themselves for college or the workforce as evidenced by our consistently outperforming state averages and expanding preparation programs throughout the district.

## V. Conclusion

For the reasons, stated above, the District has satisfied its desegregation obligations with respect to quality of education and has strived in good faith to prepare all of its students, without

regard to race, for post-educational opportunities. The single statistic raised during the community hearing, made by those individuals with no personal knowledge of the District, should not counsel the Court otherwise.

Dated: November 4, 2026

Respectfully submitted,

ROBERT LEE THOMAS, counsel NCSD